**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PURITA BELDA, | Case No. CV 15-7634 FMO (AGRx) |
| Plaintiff, | Case No. CV 16-3033 FMO (AGRx) |
| v. | **ORDER Re: PENDING MOTIONS** |
| BANK OF AMERICA, N.A., et al., | |
| Defendants. | |

Having reviewed and considered defendant Bank of America, N.A.'s ("BANA") Motion to Dismiss Plaintiff's [Consolidated] First Amended Complaint (Dkt. 63, "BANA Mot."), and defendants Select Portfolio Servicing, Inc. ("SPS") and The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2007-OA4, Mortgage Pass-Through Certificates, Series 2007-OA4's ("BNYM") Motion to Dismiss Consolidated First Amended Complaint (Dkt. 66,  "SPS Mot."), the court finds that oral argument is not necessary to resolve the motions, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**INTRODUCTION**

On September 14, 2015, plaintiff Purita Belda ("plaintiff" or "Belda"), filed a state-court complaint against BANA, SPS, and BNYM (collectively, "defendants"), asserting various state-law claims.  (See Dkt. 3, Notice of Removal [] ("NOR") at 2 & Exhibit ("Exh.") A (Dkt. 3-1, Complaint)).

On September 29, 2015, defendants removed the action to this court on the basis of diversity jurisdiction.  (See Dkt. 3, NOR at 2-4).

On October 28, 2015, in response to BANA's then-pending motion to dismiss, plaintiff filed a First Amended Complaint ("FAC") asserting claims for (1) fraud; (2) fraudulent concealment; (3) intentional misrepresentation; (4) violation of Cal. Civ. Code § 2923.5; (5) violation of Cal. Civ. Code § 2924(a)(6); (6) violation of Cal. Civ. Code § 2924.17 ("§ 2924.17"); and (7) cancellation of instrument.  (See Dkt. 17, FAC at ¶¶ 38-91).  On November 4, 2015, the court denied plaintiff's ex parte application for a temporary restraining order, which sought to enjoin the then-pending foreclosure sale.  (See Dkt. 21, Court's Order of November 4, 2015).

On June 20, 2016, the court granted defendants' motions to dismiss, dismissing with prejudice all but the § 2924.17 claim, which was dismissed with leave to amend.  (See Dkt. 52, Court's Order of June 20, 2016, at 20).  The court also granted plaintiff leave to assert a new claim for violation of California Civil Code § 2923.55 ("2923.55").  (See id.).  The court denied without prejudice SPS and BNYM's motion for monetary sanctions.  (See id.).  On June 27, 2016, plaintiff filed a Second Amended Complaint ("SAC"), asserting claims for violation of §§ 2923.55 and 2924.17.  (See Dkt. 53, SAC).

Meanwhile, on March 17, 2016, plaintiff filed a second state-court action against BANA, SPS, BNYM, and French Fund, LLC ("French Fund"), which asserted claims for (1) cancellation of instrument; and (2) cancellation of mortgage.  (See Purita Belda v. Bank of America, N.A., et al., Case No. 16-3033 ("Belda II") at Dkt. 3, Notice of Removal ("NOR") & Exh. A (Dkt. 3-1, "Belda II Complaint")).  SPS and BNYM removed Belda II on May 3, 2016.  (See Belda II, Dkt. 3, NOR).

On July 18, 2016, pursuant to stipulation of the parties, the court ordered the instant action consolidated with Belda II, and ordered plaintiff to file a consolidated complaint.  (See Dkt. 57, Court's Order of July 18, 2016, at 1-2).  On July 25, 2016, plaintiff filed her Consolidated First Amended Complaint ("CFAC") against BANA, SPS, BNYM, and French Fund, asserting claims for (1) violation of § 2923.55 (against BNYM and SPS only); (2) violation of § 2924.17 (against

BNYM and SPS only); (3) cancellation of instrument (against all defendants); and (4) cancellation of mortgage (against BANA and BNYM only).[1]  (See Dkt. 60, CFAC at ¶¶ 2-4 & 38-71).

## BACKGROUND[2]

I.    ALLEGATIONS IN THE CFAC.

On February 27, 2007, a Deed of Trust ("DOT") securing an adjustable-rate loan for $735,000 was recorded against plaintiff's property, located in Culver City, California.  (See Dkt. 60, CFAC at ¶¶ 16-17 & Exh. A (Dkt. 60-1, "DOT")).  The DOT lists Belda as the borrower, America's Wholesale Lender ("AWL") as the lender, ReconTrust Company, N.A. ("ReconTrust") as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. (See Dkt. 60-1, DOT at 1-2).

On June 14, 2011, a Corporation Assignment of Deed of Trust was recorded assigning the DOT to BNYM.  (See Dkt. 60, CFAC at ¶ 24 & Exh. C (Dkt. 60-3, "First ADOT")).  On September 15, 2011, another Assignment of Deed of Trust was recorded again assigning the DOT to BNYM.

---

[1]    Other than the caption, plaintiff does not mention French Fund in her CFAC.  (See, generally, Dkt. 60, CFAC).  In any event, plaintiff dismissed French Fund on August 4, 2016.  (See Dkt. 68, Voluntary Dismissal of Defendant French Fund, LLC from Complaint).

[2]    The relevant facts are based on the CFAC and the documents attached to the CFAC. Most of the documents attached to the CFAC are also included in defendants' requests for judicial notice.  (See Dkt. 64, Defendant Bank of America, N.A.'s Request for Judicial Notice in Support of Motion to Dismiss Plaintiff's First Amended Complaint ("BANA RJN") (all exhibits in BANA's RJN are attached to CFAC); Dkt. 67, Defendants' Request for Judicial Notice in Support of Motion to Dismiss Consolidated First Amended Complaint ("SPS RJN") (Exhibits 1, 3 & 7-9 in the SPS RJN are attached to CFAC)).  Plaintiff does not object to defendants' RJNs.  (See, generally, Dkt. 69, Plaintiff Purita Belda's Opposition to Defendants' Motion to Dismiss Consolidated First Amended Complaint ("Opp.")).  "A court may . . . consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); see Dunfee v. Truman Capital Advisors, LP, 2013 WL 1285152, *2 n. 2 (S.D. Cal. 2013) (taking judicial notice of deed of trust, notice of default, notice of trustee's sale and a trustee's deed upon sale); Velasquez v. Countrywide Home Loans, Inc., 2012 WL 2368285, *2 (N.D. Cal. 2012) (similar); Gomez v. Wells Fargo Home Mortg., 2011 WL 5834949, *1 n. 2 (N.D. Cal. 2011) (similar)).  The court will grant BANA's RJN, and grant in part and deny in part SPS's RJN.  With respect to the SPS RJN, the court does not rely on Exhibits 2, 4-6, and 10, and therefore does no need to take judicial notice of those documents.

(See Dkt. 60, CFAC at ¶ 28 & Exh. D (Dkt. 60-4, "Second ADOT")).   In both instances, MERS executed the assignments.   (See Dkt. 60-3, First ADOT; Dkt. 60-4, Second ADOT).

In 2014 "Defendants, either jointly, or severally unilaterally increased the payments due on the purported Note from approximately $2700 a month to approximately $5,000 a month.   As a result, Plaintiff experienced financial hardship, and began having difficulty making her fraudulently induced monthly mortgage payments."   (Dkt. 60, CFAC at ¶ 27).

On May 20, 2015, a Notice of Default ("NOD") and a Substitution of Trustee ("SOT") were recorded.   (See CFAC at ¶ 30 & Exhs. E (Dkt. 60-5, NOD) & F (Dkt. 60-6, SOT)).   The NOD reflected that plaintiff was $56,504.14 in arrears.   (See Dkt. 60-5, NOD at 2).   Pursuant to the SOT, the National Default Servicing Corporation ("NDSC") was substituted in as the trustee.   (See Dkt. 60-6, SOT; Dkt. 60, CFAC at ¶ 30).

On or about June 3, 2015, plaintiff's representative faxed a complete loan modification application to SPS.   (See Dkt. 60, CFAC at ¶ 31).   On or about June 25, 2015, SPS acknowledged receipt of the complete application and, on or about July 2, 2015, notified plaintiff by letter that "there were no loss mitigation options for which she was approved."   (Id.) (internal alteration marks omitted).   Plaintiff alleges that "[a]t no time did any of the defendants . . . contact [her] to assess and discuss her financial situation and/or alternatives to foreclosure."   (Id. at ¶ 32).

On August 27, 2015, a Notice of Trustee's Sale ("NOTS"), reflecting an unpaid principal balance of $888,791.60, was recorded by the NDSC.   (See Dkt. 60, CFAC at ¶ 33 & Exh. G (Dkt. 60-7, NOTS at 1)).   Pursuant to the NOTS, the trustee's sale was to take place on September 18, 2015.   (See Dkt. 60-7, NOTS at 2).   The September 18, 2015, trustee's sale did not take place. Instead, a trustee's sale was scheduled for, and occurred, on November 4, 2015.   (See Dkt. 21, Court's Order of November 4, 2015, at 3; Dkt. 60, CFAC at ¶ 37).

The gravamen of plaintiff's CFAC is that the transaction surrounding the Note and the DOT "never occurred, and all representations to the contrary are false[ because] America's Wholesale Lender . . . did not come into its corporate existence until December 16, 2008."   (Dkt. 60, CFAC at ¶¶ 19 & Exh. B (Dkt. 60-2, New York Department of State Division of Corporations Entity Information for America's Wholesale Lender, Inc. ("AWLI Entity Info"))).   According to plaintiff, the

4

DOT is void and of no effect because America's Wholesale Lender did not exist at the time the DOT was executed.  (Dkt. 60, CFAC at ¶ 23; see id. at ¶¶ 44-48, 62 & 65).

Plaintiff also challenges the assignments of the DOT, and the alleged failure of defendants to comply with various statutory provisions relating to the foreclosure process.  (See Dkt. 60, CFAC at ¶¶ 24-25, 28-29, 32 & 34).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal (Iqbal), 550 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010).  Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 550 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 267, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading

party, and resolve all doubts in the pleader's favor.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); <u>Berg v. Popham</u>, 412 F.3d 1122, 1125 (9th Cir. 2005).  Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory.  <u>See</u> <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

## DISCUSSION

I.    MOTION TO DISMISS.

A.    <u>California Civil Code § 2923.55.</u>

Plaintiff alleges that defendants BNYM and SPS violated § 2923.55 by recording the NOD without first contacting, or diligently attempting to contact, her to discuss her financial condition and available options to avoid foreclosure.  (<u>See</u> Dkt. 60, CFAC at ¶¶ 39-40).  She claims that defendants' failure to contact her "renders the NOD defective and void."  (<u>See</u> Dkt. 60, CFAC at ¶ 40).

Section 2923.55 provides in relevant part that "[a] mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default . . . until . . . [e]ither 30 days after initial contact is made as required by paragraph (2) of subdivision (b) or 30 days after satisfying the due diligence requirements as described in subdivision (f)."  Cal. Civ. Code § 2923.55(a)(2).  Civil Code § 2923.55(b)(2), in turn, provides in relevant part that "[a] mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Cal. Civ. Code § 2923.55(b)(2).  A servicer is excused from this requirement if the borrower could not be reached despite due diligence.  <u>See</u> <u>id.</u> at § 2923.55(f).  When a notice of default is filed, the mortgage servicer must include a declaration that the notice or due diligence requirements have been satisfied.  <u>Id.</u> at 2923.55(a)(2), (f).

BNYM and SPS contend that plaintiff's claim fails as a matter of law because she admitted in a declaration filed in connection with her <u>ex parte</u> application for a temporary restraining order

1    that "[b]etween the period of time commencing in 2014 and continuing to the present [she has]
2    attempted to negotiate a modification of the terms and conditions of the loan[.]"   (Dkt. 19,
3    Declaration in Support of <u>Ex</u> <u>Parte</u> Application for Temporary Restraining Order and Order to
4    Show Cause Re Preliminary Injunction ("Belda Decl.") at ¶ 3; <u>see</u> Dkt. 66, SPS Mot. at 1 & 5-6).
5    Defendants contend that this constitutes a judicial admission that § 2923.55 was fully satisfied.
6    (<u>See</u> Dkt. 66, SPS Mot. at 5-6); <u>see</u> <u>also</u> <u>Johnson v. SunTrust Mortg., Inc.</u>, 2014 WL 3845205, *4
7    (C.D. Cal. 2014) ("Because plaintiffs concede that they had discussions with SunTrust regarding
8    their financial situation and loan modification options, this alleged violation of Section
9    2923.55(b)(2) fails.").

10       Plaintiff does not address SPS and BNYM's contention regarding her contacts with
11   defendants prior to the recording of the NOD, (<u>see</u>, <u>generally</u>, Dkt. 69, Opp. at 9), but argues
12   instead that defendants' "reasoning is based upon the presumption that the Plaintiff was in fact
13   communicating with the party entitled to enforce the terms and conditions of the transaction that
14   resulted in the DOT" (<u>id.</u>), and that "the conversations conducted to determine the availability of
15   Plaintiff's right to a modification on the part of the Plaintiff never occurred with the party possessing
16   the determination of those rights."  (<u>Id.</u> at 10).  As an initial matter, the court notes that this theory
17   was not alleged in the CFAC.  (<u>See</u>, <u>generally</u>, Dkt. 60, CFAC at ¶¶ 38-41).  Plaintiff alleges that
18   SPS and BNYM violated § 2923.55 because no "communication ever occurred between the
19   Plaintiff and either defendant BNYM, or defendant SPS who recorded the NOD on behalf of
20   defendant BNYM." (Dkt. 60, CFAC at ¶ 39).

21       In any event, plaintiff's current theory is without merit. Plaintiff's theory appears to be based
22   on her allegations that AWL or AWLI was a non-existent entity when plaintiff executed the DOT
23   in February 2007.[3]  (<u>See</u> Dkt. 69, Opp. at 5 (contending the reference to AWL on the DOT "is a

24   ─────────────
25   [3]  Plaintiff's FAC relied on the allegations in a lawsuit BANA filed in 2012 against an entity
     named America's Wholesale Lender, Inc. ("AWLI"), which according to the AWLI lawsuit and
26   plaintiff's complaint, was  an inactive New York corporation registered on or about December 16,
     2008.  (<u>See</u> Dkt. 17, FAC at ¶¶ 41-44).  Plaintiff alleged that "all of the alleged mortgages and
27   recorded deeds of trust created in favor of America's Wholesale Lender, Inc. as a lender prior the
     date of December 16, 2008 were void and of no effect [since] America's Wholesale Lender, Inc.
28   was not incorporated in the State of New York until December 16, 2008[,] more than 18 months

1   legal impossibility due to the fact that America's Wholesale Lender did not come into its corporate

2   existence until December 16, 2008")).  However, the court previously rejected that premise, (see

3   Dkt. 52, Court's Order of June 20, 2016, at 9-12 (addressing fraud claims); id. at 17 (addressing

4   § 2924.17 claim); id. (addressing cancellation of instrument claim)), and nothing in the CFAC or

5   plaintiff's opposition compels a different outcome.  (See, generally, Dkt. 60, CFAC; Dkt. 69, Opp.

6   at 9-10).

7   　　　　To the extent plaintiff's new theory is based on her allegation that the Second ADOT, by

8   which MERS assigned the DOT to BNYM, is void since MERS had already assigned it to BNYM

9   a few months earlier, (see Dkt. 60, CFAC at ¶¶ 24 & 29; see also Dkt. 69, Opp. at 9), plaintiff fails

10  to state a claim.  Plaintiff alleges that "[a]t the time of the [Second ADOT], MERS possessed no

11  legal ability to once assign what had allegedly been assigned 3 months prior[, and as such it] was

12  void ab initio[.]"  (Dkt. 60, CFAC at ¶ 29).  However, even if MERS assigned the DOT to BNYM

13  in June 2011, the Second ADOT would merely be superfluous, see, e.g., Wilson v. HSBC Mortg.

14  Servs., Inc., 744 F.3d 1, 14 (1st Cir. 2014) (concluding that in circumstance where MERS assigned

15  mortgage to HSBC in 2009, second assignment, from MERS to HSBC in 2011 was "superfluous

16  and of no legal effect or significance"), since in both instances MERS assigned the DOT to BNYM,

17  (see Dkt. 60, CFAC at ¶¶ 24 & 29), rather than to different entities.[4]  (See, generally, id.; see also

18  ───────────────────────────

19  after the alleged creation of an obligation fraudulent at its inception, and evidenced as an alleged
    encumbrance upon the real property of the Plaintiff as a DOT."  (Id. at ¶ 44).  The court previously
20  found that plaintiff had misread the AWLI complaint and the DOT and that AWLI's date of
    incorporation was irrelevant to the transaction plaintiff entered into with AWL.  (See Dkt. 52,
21  Court's Order of June 20, 2016, at 9-12.)  Plaintiff no longer explicitly relies on the AWLI lawsuit,
22  but instead rests on the AWLI Entity Info regarding AWLI's incorporation.

23  　　　[4]　Plaintiff relies on Yvanova v. New Century Mortgage Corp., 62 Cal.4th 919 (2016) in
    connection with her argument that"[t]he assignment to Bank of America is void, and not merely
24  voidable."  (Dkt. 69, Opp. at 9).  As an initial matter, it is unclear which assignment to Bank of
    America plaintiff directs the court since there are no allegations in the CFAC regarding any such
25  assignment.  (See, generally, Dkt. 60, CFAC).  But in any event, the California Supreme Court in
    Yvanova merely held that a homeowner has standing to challenge a void assignment following
26  foreclosure, see Yvanova, 62 Cal.4th at 942-43; it did not address whether the allegedly void
    assignment in that case was void or merely voidable.  See id. at 924 ("Nor do we hold or suggest
27  that plaintiff in this case has alleged facts showing the assignment is void[.]").  In Culhane v.
28  Aurora Loan Servs. of Neb., 708 F.3d 282 (1st Cir. 2013), which plaintiff cites for the proposition

1 | Dkt. 52, Court's Order of June 20, 2016, at 15 (finding that even if Second ADOT invalid due to
2 | prior assignment, it "would not render any remaining assignments and the foreclosure-related
3 | notices void" because as plaintiff alleged, "the First ADOT had already assigned the DOT to
4 | BNYM")).

5 |       B.      California Civil Code § 2924.17.

6 |       Plaintiff alleges that SPS and BNYM violated § 2924.17, (see Dkt. 60, CFAC at ¶¶ 42-48),
7 | which provides in relevant part:

8 |             (a) A declaration recorded pursuant to Section 2923.5 or, until January 1,
9 |             2018, pursuant to Section 2923.55, a notice of default, notice of sale,
10 |            assignment of a deed of trust, or substitution of trustee recorded by or on
11 |            behalf of a mortgage servicer in connection with a foreclosure subject to the
12 |            requirements of Section 2924, or a declaration or affidavit filed in any court
13 |            relative to a foreclosure proceeding shall be accurate and complete and
14 |            supported by competent and reliable evidence.

15 |            (b) Before recording or filing any of the documents described in subdivision
16 |            (a), a mortgage servicer shall ensure that it has reviewed competent and
17 |            reliable evidence to substantiate the borrower's default and the right to
18 |            foreclose, including the borrower's loan status and loan information.

19 | Cal. Civ. Code § 2924.17(a)-(b).

20 |       Plaintiff contends that "as a direct result of the impossibility of the defendants being able
21 | to comply with the provisions of Civil Code § 2924.55 [sic], the provisions of Civil Code § 2924.17

22 |

23 | _____

24 | that "a mortgage assignment is void, not merely voidable, where the assignor 'had nothing to
     assign' or "no interest to assign[,]" (see Dkt. 69, Opp. at 9), the plaintiff challenged MERS' general
25 | ability to assign a mortgage, and argued that it never held the mortgage and, therefore, never had
     an interest to assign.  See Culhane, 708 F.3d at 291 (holding plaintiff had standing to challenge
26 | the validity of the assignment).  The case did not involve a subsequent assignment involving the
     same parties as in this case.  However, the First Circuit in Wilson also cited by plaintiff, concluded
27 | that a subsequent assignment involving the same parties merely rendered the second assignment
     "superfluous[.]"  744 F.3d at 14.  It did not, as plaintiff suggests, render the entire chain of
28 | assignments void.

have been violated." (Dkt. 69, Opp. at 10). This claim fails for the same reasons plaintiff's § 2923.55 claim fails. Indeed, the court previously granted plaintiff leave to amend this claim because of the possibility that plaintiff could state a claim for violation of § 2923.55. (See Dkt. 52, Court's Order of June 20, 2016, at 17) (citing Green v. Central Mortg. Co., 148 F.Supp.3d 852, (N.D. Cal. 2015) (finding allegations that defendants did not comply with § 2923.55 sufficient to state a claim for violation of § 2924.17)).

C.   Cancellation of Instrument Claim.

Plaintiff's claim for cancellation of instrument pursuant to California Civil Code § 3412 is primarily based on her allegations regarding AWLI's non-existence at the time the Note and DOT were executed. (See Dkt. 60, CFAC at ¶¶ 49-56; see e.g., id. at ¶ 54 ("The claims of Defendants are based on the DOT set forth and described in ¶¶ 16 and 17 . . . purporting to create and convey a pecuniary interest in the Property to America's Wholesale Lender, Inc., an entity that did not exist at the time of the creation of said DOT.")).

California Civil Code § 3412 provides: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Because the court, as discussed above, finds plaintiff's allegations regarding AWLI to be implausible, plaintiff has failed to state a claim for cancellation of instrument. See Saterbak v. JPMorgan Chase Bank, N.A., 245 Cal.App.4th 808, 818-19 (2016) (finding plaintiff failed to state a cancellation claim because she could not allege that an assignment of a deed of trust was void or voidable against her); (see also Dkt. 52, Court's Order of June 20, 2016, at 17).

Citing the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1635, et seq., Regulation Z[5] and Jesinoski v. Countrywide Home Loans, Inc., 135 S.Ct. 790 (2015), plaintiff further alleges that on or about November 3, 2015, she "rescinded the void transaction by virtue of a written notice of

---

[5]   Regulation Z implements TILA. See Schramm v. J.P. Morgan Chase Bank, N.A., 655 F.App'x. 553, 554 (9th Cir. 2016); Merritt v. Countrywide Fin. Corp., 759 F.3d 1023, 1032 (9th Cir. 2014).

1   rescission[.]"  (See CFAC at ¶ 50 & Dkt. 60-8, Exh. H (Notice of Rescission)).

2          Pursuant to TILA's rescission provisions, borrowers have "an unconditional right to rescind

3   for three days, after which they may rescind only if the lender failed to satisfy the Act's disclosure

4   requirements."  Jesinoski, 135 S.Ct. at 792.  "But this conditional right to rescind does not last

5   forever.  Even if a lender never makes the required disclosures, the 'right of rescission shall expire

6   three years after the date of consummation of the transaction or upon the sale of the property,

7   whichever comes first.'"  Id. (quoting 15 U.S.C. § 1635(f)).[6]  Section 1635(f) is not merely a statute

8   of limitations, it is a "statute of repose" that "completely extinguishes the underlying right itself."

9   McOmie-Gray v. Bank of Am. Home Loans, 667 F.3d 1325, 1329 (9th Cir. 2012), abrogated on

10   other grounds by Jesinoski, 132 S.Ct. at 792.

11          Here, the transaction was entered into in February 2007 (see Dkt. 60-1 (DOT) (recorded

12   on February 27, 2007); Dkt. 60, CFAC at ¶ 17 (noting same)), but plaintiff did not sign the Notice

13   of Rescission until November 3, 2015, (see Dkt. 60-8, Notice of Rescission); see also Dkt. 60,

14   CFAC at ¶ 50 (alleging plaintiff rescinded the transaction on or about November 3, 2015)), more

15   than eight years later.  Thus, plaintiff's claim is time-barred.[7]  See 15 U.S.C. § 1635(f); Jesinoski,

16   135 S.Ct. at 792; Sotanski v. HSBC Bank USA, NA, 2016 WL 7407292 (9th Cir. 2016) ("The

17

18        [6]  Title 15 U.S.C. § 1635(f) provides in relevant part:  "An obligor's right of rescission shall
expire three years after the date of consummation of the transaction or upon the sale of the

19   property, whichever occurs first, notwithstanding the fact that the information and forms required

20   under this section or any other disclosures required under this part have not been delivered to the
obligor[.]"

21        [7]  Although defendants raised this issue in their motions to dismiss, (see Dkt. 63, BANA's

22   Mot. at 11-12; Dkt. 66, SPS Mot. at 8-9), plaintiff did not address the timeliness of her Notice of
Rescission in her Opposition.  (See, generally, Dkt. 69, Opp. at 10-12.)  Nor did plaintiff file any

23   opposition to BANA's motion, which addressed only plaintiff's cancellation of instrument and
cancellation of mortgage claims.  (See Dkt. 63, BANA Mot.; see, generally, Dkt.).  Plaintiff's

24   failure to address defendants' contentions is tantamount to a concession that her claim is time-barred and
both of her cancellation claims fail for the reasons stated in BANA's Motion.  See GN Resound A/S

25   v. Callpod, Inc., 2013 WL 1190651, *5 (N.D. Cal. 2013) (holding that, when a party fails to oppose
a motion as to a particular issue, "the Court construes" it as a concession); Hall v. Mortg. Investors

26   Grp., 2011 WL 4374995, *5 (E.D. Cal. 2011) ("Plaintiff does not oppose Defendants' arguments

27   regarding the statute of limitations in his Opposition.  Plaintiff's failure to oppose . . . on this basis
serves as a concession[.]"); L.R. 7-12 ("The failure to file any required document . . . may be

28   deemed consent to the granting or denial of [a] motion[.]").

1  district court properly dismissed as time-barred [plaintiff's] TILA claim for rescission because

2  [plaintiff] did not deliver a notice of rescission within three years of consummation of the loan.").

3       D.   <u>Cancellation of Mortgage</u>.

4       Plaintiff also asserts a claim for cancellation of mortgage by which she seeks cancellation

5  of the DOT.  (<u>See</u> Dkt. 60, CFAC at ¶¶ 60-71).  This claim is based on the same allegations

6  regarding the non-existence of AWLI, (<u>see</u> <u>id.</u> at ¶ 65), and her Notice of Rescission.  (<u>See</u> <u>id.</u> at

7  ¶ 71).  As such it fails for the reasons discussed above.[8]

8  II.   DISMISSAL WITHOUT LEAVE TO AMEND.

9       Rule 15 of the Federal Rules of Civil Procedure provides that the court "should freely give

10  leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); <u>see</u> <u>Morongo Band of</u>

11  <u>Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990) (The policy favoring amendment

12  must "be applied with extreme liberality.").  However, "[i]t is settled that the grant of leave to amend

13  the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."  <u>Zenith Radio Corp.</u>

14  <u>v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330, 91 S.Ct. 795, 802 (1971).  This decision is guided

15  by an examination of several factors, including: (1) whether the amendment causes the opposing

16  party undue prejudice; (2) whether the amendment is sought in bad faith; (3) whether the

17  amendment causes undue delay; (4) whether the amendment constitutes an exercise in futility;

18  and (5) whether the plaintiff has previously amended his or her complaint.  <u>See</u> <u>DCD Programs,</u>

19  <u>Ltd. v. Leighton</u>, 833 F.2d 183, 186 & n. 3 (9th Cir. 1987).

20       Having liberally construed and assumed the truth of the allegations in the CFAC, the court

---

22    [8]  Plaintiff also seeks cancellation of the DOT because she alleges that MERS did not have the power to assign the DOT.  (<u>See</u> Dkt. 60, CFAC at ¶ 66).  Her claim appears to predicated on two assumptions.  First, that AWLI did not exist when the DOT and Note were executed.  (<u>See</u> <u>id.</u> at ¶¶ 61-62; Dkt. 69, Opp. at 12).  Second, while the DOT gives MERS the power to assign the DOT, "it does not mention the Note, nor does the Note itself name MERS as nominee." (Dkt. 69, Opp. at 12; Dkt. 60, CFAC at ¶ 66).  As for the first assumption, it fails for the reasons discussed above.  <u>See</u> <u>supra</u> at § I.A.-C.  With respect to the second, it is unavailing.  As the beneficiary under the DOT, MERS had the ability to execute assignments of the DOT.  <u>See</u> <u>Germon v. BAC Home Loans Servicing, L.P.</u>, 2011 WL 719591, *2 (S.D. Cal. 2011) (collecting cases and explaining that language in a deed of trust identifying MERS as the beneficiary (as nominee for lender and its successors and assigns) grants MERS the power to assign its interest whether or not it is an "economic beneficiary or not").

is persuaded that plaintiff's claims cannot be saved through amendment.  See Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely.").   Under the circumstances, it would be futile to afford plaintiffs a fifth opportunity to state a claim.[9]  See  Cafasso, United States ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("[T]he district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint.") (internal quotation marks omitted); Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003), cert. denied, 541 U.S. 1043 (2004), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir.) (en banc), cert. denied, 552 U.S. 985 (2007).  Accordingly, plaintiff's CFAC will be dismissed without leave to amend.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.    BANA's Motion to Dismiss Plaintiff's [Consolidated] First Amended Complaint **(Document No. 63)** is **granted**.

2.    SPS and BNYM's Motion to Dismiss Consolidated First Amended Complaint **(Document No. 66)** is **granted**.

3.    Plaintiff's Consolidated First Amended Complaint is **dismissed with prejudice**. Judgment shall be entered accordingly.

Dated this 28th day of February, 2017.

/s/
Fernando M. Olguin
United States District Judge

---

[9]   Plaintiff filed the original Complaint on September 14, 2015, (see Dkt. 3-1, Complaint), the FAC on October 28, 2015, (see Dkt. 17, FAC), and the SAC on June 27, 2016.  (See Dkt. 53, SAC).  After consolidating this case with Belda II, and after some defendants filed a motion for judgment on the pleadings in Belda II, the court ordered plaintiff to file a consolidated complaint. (See id. at Dkt. 36, Court's Order of July 18, 2016).  Thus, allowing plaintiff to file a Second Consolidated Amended Complaint would constitute plaintiff's fifth attempt to plead her claims.